Thank you. Good morning, Your Honor. May it please the Court, my name is James Mann. I represent Harborside, the taxpayer in this case. I'd like to reserve five minutes for rebuttal if I may. I will watch the call. There are two issues in this case. The first issue has to do with the 16th Amendment. The Commissioner presents a novel understanding of the 16th Amendment, saying it doesn't apply to 280B. This understanding reflects what's a very important precedent. This avows the 10th Circuit's position in Albany and would effectively read the 16th Amendment out of the Constitution. The second issue is a tax accounting issue. Max Sobel controls this case and would have to be overruled for the Commissioner to prevail. There, the Court held the cost of withhold is determined before deductions to get to gross income, but to the extent the Commissioner tries to use the 471-3 regs to disallow costs that belong to the cost of withhold, the 471-3 regs are presumptively invalid. Can we just ask, on the constitutional argument, it just doesn't seem that this was raised below, was it? Yes, it was, Your Honor. The 16th Amendment issue was in trial counsel's brief, and that's in the excerpts of record, and the tax court opinion talks about the 16th Amendment, so it seems to me that that's all that's needed to preserve the argument. I'm not sure I agree. I mean, the way it was raised is a little bit more of a weighted argument, and the way it's touched upon in the tax court decision on review seems to me quite a bit different than the way you're arguing it here, in part because you're arguing it here in a more robust way than you argued it below. Is that fair? Yes, that's true, Your Honor, but the way an argument is presented below doesn't mean that you can't change your approach to that argument on appeal. The 16th Amendment clearly is an issue in this case. It's an issue of the industry. This is purely an issue of law, and there's this big record in this case to enable the court to make the decision about it. How do you respond then to the argument that the 16th Amendment just doesn't apply, that this is not a direct tax, and therefore the 16th Amendment is not important? It's far-fetched. I mean, the court in Alconco in the 10th Circuit started off correctly. It says the 16th Amendment controls 280. 280 is part of the income tax. The 16th Amendment says income taxes don't have to be apportioned. In the 16th Amendment, income means gain. That's the plain meaning of income. That's what the court said in Eisner v. Montgomery. And immediately after the enactment of the 16th Amendment, there were Supreme Court cases that said the corporate income tax is clearly controlled by the 16th Amendment. What cases were you referring to? Brush Haber v. Union Pacific, Your Honor, where Union Pacific said, well, this corporate income tax doesn't, you know, it's not valid under the 16th Amendment, which had just been passed. And the court said, no, it is a corporate income tax. What the 16th Amendment says, it talks about incomes from whatever source derived, and that includes the corporate income tax. The commissioner's position is that somehow 280E isn't a disallowance of a deduction, but it's somehow a freestanding tax on business income, which it obviously isn't. It's a way of increasing taxable income, so it bears no relation to the gain of the taxpayer. Isn't your argument really that the 280E tax must allow all deductions that are allowed to other taxpayers? You don't have to allow all deductions. Here's my problem. They allow some. It's not simply your gross receipts that are being taxed. There are some costs of business that are being allowed to be removed from income. So it seems to me your argument must be sort of an equal protection argument. We're not getting the same break that other taxpayers get on their corporate tax. And that doesn't strike me as a 16th Amendment argument. Am I wrong in that characterization? Yes, you are. The only deductions from taxable income that the taxpayers allow under 280E is costs of goods sold. Costs of goods sold don't include ordinary necessary business expenses like wages. But that's my point. My point is that they allow some deduction, costs of goods sold, not others. And so is it the fact that they don't allow... Why is that then not just a tax on something less than gross receipts, but rather than on income? Are we fighting about the definition of income? The 16th Amendment says that income includes gain. So here the idea is that because the 280E disallows all of these expenses, the relationship between gain and the amount that's taxed is severed. So your position is that to be constitutional, the definition of the taxable amount under 280E must include all traditional measures of gain? It doesn't have to include all traditional measures of gain. This case is not about drawing lines or three-factor tests or anything like that. This case is about the difference between all and some. 280E disallows all expenses. No, it doesn't. See, that's my problem. My problem is you say the cost of goods, for example, can be... When figuring out what your income is, you subtract the cost of goods. And so it's not taxing gross receipts. It's taxing something less than gross receipts. And so I'm trying to figure out where your constitutional line is about what must be subtracted from gross receipts before this becomes constitutional. Your Honor, cost of goods sold is what you subtract from gross receipts to get to gross income. And the tax is levied on gross income. So... Yes, well, I understand that. Cost of goods sold isn't even a deduction. It's a way you start to get to gross income. So... Whether we call it a deduction or a reduction, it's clear that gross receipts are not being taxed, correct? Yes, and that's the distinction this Court draws in Max Ohm. It is the distinction between above the line and below the line. Cost of goods sold is getting to gross income. It's not a deduction. It's not a... So in your mind, what is the minimum amount of deductions that must be allowed before a tax becomes constitutional under the 16th Amendment? I don't know, but we're not asking the Court to draw a line here. Again, it's a... You are. You're asking us to say that some must be allowed. And so the question is, what must be allowed? No, we're asking you to adhere to the traditional definition of cost of goods sold, which is they're not really deductions. They're just reductions in gross income. Okay, so let me rephrase your argument so I understand it. Your position is that any tax that doesn't allow what have been traditionally viewed under the Internal Revenue Code as deductions is unconstitutional. Any tax that disallows all deductions. Because it severs the idea, it severs the connection between gain and income. You're being taxed on something that's not income. Congress could have passed a gross receipts tax. You pay tax every time you buy a gallon of gas, right? But instead, Congress put this in the middle of the income tax. It's a disallowance of a deduction of all normal expenses. And I'm sure you want to move on to another topic, but I just want to just make sure I understand your position. Your position is that the Internal Revenue Code with respect to taxing gross receipts minus cost of goods must include some form of deduction. Yes, Your Honor. Okay. But I guess I'm then confused now by what you're asking here. Are you saying because that is not allowed, because all deductions are disallowed under 280E, the remedy for that is that we have to just strike down the whole statute even though Congress could permit compliance deductions in some way? That's right, Your Honor. This is a facial challenge. 280E necessarily severs the connection between gain and the amount being subject to tax. If Congress wanted to pass 280Z saying some of the expenses are disallowed but not others, that would be a different case. This case is about all the expenses. But does that same argument then apply to the illegal kickbacks provision? In other words, that's another business that Congress regards as illegal. It regards your client's business as illegal, too, even though state law treats it differently. But is the import of your argument that any business, Congress will have to allow deductions even if it regards the conduct of that business as violating law, even the criminal law? Congress, with respect to kickbacks, Congress can disallow any specific set of expenses. It can disallow kickbacks, bribes, excessive contributions to pension plans, whatever. But it's just that Congress can't disallow all deductions the way it does here. Moving on to the tax accounting argument briefly, the idea is that, again, there is this distinction between cost of goods sold and deductions, and that the taxpayer is allowed to have its method of accounting unless there's a failure to clearly reflect income. Can I ask you the same question Judge Brast asked at the beginning? With respect to the tax accounting method, not whether sub B applies, but whether the method that you think is required was chosen, how is that preserved in the tax court? I'm not sure I understand your question. I'm not sure I see that argument having been made in the tax court, which is that the wrong method of accounting was used. Am I wrong about that? Yes, Your Honor, because there was a lot of, there's a lot of testimony and arguments in the briefs about the proper calculation of cost of goods sold. And that's why, for example, in one of the trials, Max Sobel denied it, saying you have to have this expansive approach, cost of goods sold. So it was in the case below. And the odd thing about the tax court opinion is that it never cites Max Sobel, which is the controlling case on this. OK, so now now let's look at your brief on appeal. On appeal, you say, even if subsection B applies, the costs that allocated to cost of goods sold were, in fact, requiring the merchandise in a condition to sell to customers. And that's, I think, the entire argument that I see about that on appeal. Where else have you developed that argument in your appellate briefs? The argument on appeal is not only that dash B doesn't apply, but that, for example, dash B. No, I understand. The argument is that dash B, first argument dash B doesn't apply. Second argument is if it applies, they applied the wrong accounting method under it. And I'm trying to figure out where in your appellate briefs to us you develop that second argument. We discuss how you shouldn't get to dash three, but even under dash three, our brief says dash 3D is more appropriate than dash 3D because dash 3D says taxpayer can use a method that is more appropriate to its particular industry. We're missing each other here. It's partly my fault. Let's assume we decide that that dash B is the appropriate reg to apply. You then have a sub argument that even if it is, the service used the wrong accounting method under dash B. At least that's what you seem to be saying. But I don't see anything in your appellate briefs other than one sentence which really talks about that point. So I'm trying to figure out where in your appellate briefs to us you develop that point. We say it wasn't so much a question of the wrong accounting method, it's just they just didn't even look at the expenses that Harborside claimed that would have been allowable under dash 3D, even under the tax court's opinion. Did you make that argument below? I mean, there were stipulated amounts put before the tax court after its ruling. Was there any argument to say, hey, you know, we understand the court's ruling that B applies, but even within B, some of these costs here really should be excludable under the B inventory rules. Would you make that argument to the tax court? That argument was made in the post-trial brief, Your Honor. I'd like to reserve the rest of my time, if I may. You may. Thank you. Let's hear from the service. May it please the court. Nathaniel Pollack representing the commissioner. This court should reject Harborside's 16th Amendment arguments for two independent reasons. The most fundamental one is that the tax we're dealing with is not a direct tax. And if I could, I'd like to just go directly to the Brush-Shaber opinion, because that's really the principal authority that Harborside relies on to argue that the service has gotten the constitutional analysis wrong. And the Brush-Shaber opinion directly supports the commissioner's position. And the quote that I would point to is in characterizing the Pollack case, it says, the Pollack case did not in any degree involve a holding that income taxes generically and necessarily came within the class of direct taxes on property. It's very clear when you look at Brush-Shaber that the court was saying, look, in Pollack, we treated income tax as a direct tax on property because we thought it had that effect. But in light of the 16th Amendment, the income tax moves back where it always was, decisively into the bucket of indirect taxes. And so the tax that we're dealing with here, so the tax that results, the increased tax burden, if you will, that results from the denial of the deductions in Section 280E, even supposing it taxed more than income, which it clearly does not, would be a constitutional tax under Article 1 because this is not a direct tax. The 16th Amendment is not the source of Congress's authority to impose income taxes. It imposed income taxes before the 16th Amendment that were ruled constitutional, including the corporate income tax and others. And so there's just that the fundamental tenant of the constitutional argument here is just a complete misunderstanding of the history of the 16th Amendment. Can I ask you a question about that? I'm probably rephrasing Mr. Mann's argument in a way that may not be accurate, but it seems to me he's making two arguments. One is that this is a direct tax. But the second one is that the 16th Amendment, I think he's saying, because it talks about income tax, allows income taxes, only allows taxes on gain. Right. And it doesn't allow taxes on something less than gain. And I won't make the rest of his argument, but I think he's making an independent 16th Amendment argument that this isn't an income tax because it doesn't allow certain deductions. Assuming that's an argument he's making, could you respond to it? Sure, I would respond to that with two points. The first point would be, even supposing that were true, it would nonetheless be constitutional. So suppose that the result of Section 280E were to be a tax on more than income and a tax that impinged upon or came closer to a tax on gross receipts. It would still be constitutional under Article 1. But let's suppose for a minute, hypothetically, that the 16th Amendment is Congress's only source of authority to tax income. And in order for Congress to impose a valid tax here, it's got to be a tax on income. The Harborside concedes that this is a tax on gross income. This court has held again and again that it's literally, the quote is unquestionable, that Congress can tax gross income. That's in the Bagnall case. And actually in the Max Sobel case, which Harborside relies on, this court says Congress is free to create, abolish, or limit tax deductions. And so this Section 280E, which eliminates tax deductions, but as Your Honor correctly pointed out, it does not eliminate all exclusions from income, is constitutional, even supposing this were a tax on property. And so in order, so if it were a tax say on income from stock, it would be a tax to which you've got to have, it's a tax on property. And so in order to not be a direct tax, it's got to be an income tax. That's basically what the 16th Amendment did is say, you know, in these categories where an income tax is treated as effectively a direct property tax, the source of income doesn't matter. But even income from property is not a direct tax. So either way, what, you know, I think the more sort of the fundamentally more sound way to look at it is to say this is a valid exercise of article, of Congress's Article 1 taxing power, and the 16th Amendment doesn't impinge upon that authority in any way. So, I mean, and you can see that from the Hylton opinion, right, that the taxes, the category of direct taxes is very small. The Pollock decision arguably expanded the, well, did expand the idea of a direct tax, and the 16th Amendment, at least to some degree, you know, reduces that back. But in no circumstance, even under the Pollock decision, the court was at pains to say, well, insofar as this is an income tax on wages, it's fine. It's just that we're going to strike it all down because we don't think Congress would have imposed this income tax if it knew that it wasn't going to be allowed to tax income from property, you know, like ownership of stock and such. So the position is that Congress can eliminate all deductions, as we traditionally understand that term, but with respect to cost of goods sold, which it cannot intrude on that, whatever that category means? I would say, Judge Brest, that under article, so it clearly has not eliminated cost of goods sold here, and that's, so that's not, but hypothetically, if Congress were to say we're going to reduce what can be, we're going to reduce the measure of cost of goods sold or even eliminate it entirely, I mean, Congress has in the past taxed gross receipts of a business. In the Spreckels Sugar case is the example of that. That was constitutional. You know, the Breshever case makes clear that an income tax is really just a species of an excise tax. So yes, but here, I think that there are cases that say, look, the idea of income includes this idea that you reduce receipts by cost of goods sold. That's inherent in sort of the meaning of the word income. And so I think, yes, to the extent that, you know, this is an income tax, and it is inherent in the meaning of the word income that you reduce receipts by cost of goods sold. And, you know, although if the income tax statute said nothing about cost of goods sold, it would be implied by the use of the word income. What we actually have now in the code is some fairly significant guidance, both in statutory and regulatory, on what counts as cost of goods sold. And so I think maybe just to transition briefly to the second, go ahead. Before you do that, your brief obviously led with the point that none of this constitutional challenge was even raised below. I take it you still hold that view? Yes. And in fact, not only was it not raised, but the harborside position below, as articulated in its post-trial brief, was that under the 16th Amendment, Congress is, quote, empowered. And then also to, quote, to tax gross income. And then this is a quote from the brief. Once gross income is calculated, Congress is then authorized to use its legislative grace in great discretionary deductions. So that's correct as a statement of law. It reflects this court's precedent. But it's exactly the opposite of what the harborside is arguing now. I know you want to shift gears here, but I want to ask you a related waiver question, and it's the one I posed to Mr. Mann. Let's assume Dash B, or however you want to call it, applies. They argue that even under Dash B, well, I think they're arguing that even under Dash B, the wrong accounting method was applied. And you say they really didn't preserve that argument in the tax court. Tell me why. Your Honor, on page 66 of the opening brief in this case, there's, I think, the one sentence that you were referring to. Right, that's the one I referred to. In the opening argument. And that, as I understood it and still understand it, that sentence makes the argument that, although it's not a long argument, but it makes the argument that, well, even if Dash B is the correct regulation to apply, all of the indirect costs at issue here would fit under Dash B. That's clearly incorrect. Well, I understand your position that it's incorrect. You also argue that it wasn't preserved. I was trying to get to that. The point that I would say is, yes, that argument wasn't made below, that all of the indirect costs at issue here fit under Dash B was not made below. Another argument that wasn't made below, sort of even more clearly, was you could have made an argument that, well, okay, so Dash B maybe does allow for some indirect costs, costs of acquiring the goods. So to the extent that there were transportation costs or other costs that were denied that were preacquisition costs that went into the actual, you know, before the goods were acquired, in order to acquire these goods, these costs were incurred. That's clearly not the majority of the indirect costs at issue here, if it's any of them. But you could have made a fallback argument that said, well, at least those costs we should get. That argument is not, I mean, I've searched for it. I don't find that anywhere in the record below. And I don't think it's even made on appeal here. It's maybe hinted at in the reply brief, although there's no attempt to itemize, well, these are the costs at issue that were preacquisition costs. And it's also, go ahead. They're also stipulated amounts that we pay tax for? Yes. The Rule 155 calculations were stipulated in light of the judgment, exactly. So I think that's another reason. I mean, so I don't think there's any basis for, you know, it's frankly not entirely clear what, you know, whether some costs, preacquisition indirect costs, sort of go into the purchasing costs from the records. Like maybe in some circumstances, things like, you know, But in any event, that argument just doesn't get made below. And I don't think there's any reason to remand, to allow that argument to be made for the first time when it clearly could have been made below here. And I think fundamentally that, you know, the crux is, it's very clear that Harborside is a reseller of goods under the regulatory framework. The principal argument that Mr. Mann makes is, well, there's broad discretion to decide what counts as costs of goods sold. And, you know, Harborside can just decide for itself, as long as it's accurate in its accounting, it can decide for itself whether it wants to include the goods as in the cost of goods sold category or in the business deduction category. There's no basis for that. The regulatory framework is at pains under section, you know, under the 471 regulations, to identify what counts as costs of goods sold for particular kinds of taxpayers. And here, because the reseller regulation applies, what counts as costs of goods sold is the purchase price of the goods, plus necessary charges incurred in acquiring possession of the goods. And so, you know, those costs that are mainly at issue in this case fall outside of that. Sorry, Your Honor, I was having trouble hearing you there. Yeah, I said Mr. Mann argued that on this point, there's inconsistency with our court's decision in Max Sobel. So how do you respond to that point? Thank you, Your Honor. Yeah, on Max Sobel, I would say, in fact, the decision in Max Sobel very directly supports the government's understanding of section 471-3B. So there was a suggestion in the tax court in Max Sobel that the cost at issue there had a kind of dual character, I think was the phrase that was used. And this court said in Max Sobel, it doubts the existence of this kind of dual character expense. And when it said that, it cited to the exact sentence in the B regulation that we're focused on now. So I think what this court's decision in Max Sobel suggests is that this court, like the IRS, reads the cost of goods sold definition as exclusive. The expenses are either in or out. There's not this broad discretion. And I would also point out that the MarCor case, which the taxpayer relies on, does the same. It directly states costs incurred after a taxpayer has acquired full dominion and control over the merchandise are not included in inventory costs. So I think the authority that's available supports the government's interpretation of the sub B regulation. And I think that this court should conclude that 280E is constitutional and that the IRS's treatment of cost of goods sold here was appropriate. Thank you. Judge Corker, did you have any questions for counsel? No, I don't. Okay. Mr. Mann, we'll put a minute back on the clock for you for rebuttal. Thank you. Your Honor, Max Sobel said exactly the opposite of what the commissioner is saying. Max Sobel said if you have an expense that can go into either cost of goods sold or be a period expense, it has to go into cost of goods sold. And to the extent the commissioner tries to put it as a period expense and doesn't disallow it, that's not valid. So that's what Max Sobel says. Keep in mind, we are asking this court to remand to the tax court to remedy the three errors it made with respect to cost. It should be directed to adhere to Max Sobel, permit Harborside to present its accounting for cost of goods sold, and apply the threshold statutory standards that the accounting method be fair and fairly reflective. If you look at amicus briefs in this case, it is important to Harborside. It's not fair to Harborside. It's not fair to the industry not to provide a true assessment of the tax accounting standards that apply to Canada's sellers. Thank you, Your Honor. We thank counsel for their arguments and briefing in this case. This case will be submitted, and the court will be in recess until tomorrow. Thank you. This court for this session stands adjourned.
judges: Hurwitz, Bress, Corker